Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/10/2018 09:10 AM CDT

JEANNE E. WIEDEL, APPELLEE, V.
MARK E. WIEDEL, APPELLANT.

___ N.W.2d ___

Filed May 18, 2018.    No. S-17-349.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Divorce: Property Division: Alimony.** In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. In addition, a court should consider the income and earning capacity of each party and the general equities of the situation.

3. **Alimony.** The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate.

4. **Alimony: Appeal and Error.** In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. The ultimate criterion is one of reasonableness.

5. ____: ____. An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record.

6. **Alimony: Child Support.** A party's alimony obligation is to be set according to the income he or she has available after his or her child support obligations, if any, have been accounted for.

7. **Alimony: Rules of the Supreme Court: Presumptions.** An alimony award which drives the obligor's net monthly income below the basic subsistence limitation set forth in the Nebraska Child Support Guidelines is presumptively an abuse of discretion unless the court specifically finds that conformity with the basic subsistence limitation would work an unjust or inappropriate result in that case.

8. **Child Support.** When determining whether the payment of certain childcare expenses will reduce the obligor's net income below the basic subsistence limitation, a court is not to consider costs that are entirely speculative.

9. **Alimony.** Alimony is not a tool to equalize the parties' income, but a disparity of income or potential income might partially justify an alimony award.

10. ____. The primary purpose of alimony is to assist an ex-spouse for a period of time necessary for that individual to secure his or her own means of support. Above all else, the duration of an alimony award must be reasonable.

Appeal from the District Court for Thayer County: VICKY L. JOHNSON, Judge. Affirmed.

Joseph H. Murray, P.C., L.L.O., of Germer, Murray & Johnson, for appellant.

Sheri Burkholder, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., L.L.O., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, and STACY, JJ., and MOORE, Chief Judge, and ARTERBURN, Judge, and DOYLE, District Judge.

STACY, J.

Mark E. Wiedel appeals from a decree of dissolution, assigning error to the amount and duration of the alimony award. Finding no abuse of discretion, we affirm.

## I. BACKGROUND

Mark and Jeanne E. Wiedel were married in April 2000 and divorced in March 2017. They have three children, triplets,

born in 2004. When the parties separated in October 2014, Mark, who farms land in Nebraska and Kansas, remained in the marital home in Hubbell, Nebraska. Jeanne, who works at a health clinic in nearby Hebron, Nebraska, moved to an apartment in Hebron. Throughout their separation, the parties voluntarily followed a shared parenting time schedule.

In August 2015, Jeanne filed a complaint for dissolution of marriage in the Thayer County District Court. Pursuant to temporary orders, Mark and Jeanne shared temporary joint legal and physical custody of their children, and followed a "week-on-week-off" parenting schedule. Mark was ordered to pay temporary child support of $768 per month and temporary alimony of $2,500 per month.

Shortly before trial, the parties executed a property settlement agreement (PSA) that addressed the division of their assets and debts. They also executed a custody agreement and parenting plan providing for joint legal and physical custody of the children, with a week-on-week-off parenting time schedule.

The parties could not reach agreement on the issues of child support, allocation of child tax credits, or alimony. In January 2017, trial was held on these contested issues. Mark and Jeanne were the only witnesses.

## 1. TRIAL

At the outset of trial, the parties offered into evidence the PSA and the parenting plan. Both parties testified the parenting plan was in the best interests of the children and asked the court to approve it. Similarly, both parties testified the PSA was fair and reasonable, and they asked the court to approve it and incorporate it into the decree. Summarized, the PSA provided that each party should be awarded all bank accounts, stocks, bonds, and retirement accounts in his or her name. Additionally, Mark was to be awarded:
• The marital residence;
• All farmland owned by the parties in Nebraska and Kansas;

- All rights, title, and interest in the farming operations of Wiedel Brothers, LLC, and another limited liability company;
- All grain, growing crops, machinery, equipment, and property related to the farming operation; and
- Three vehicles—a 2015 GMC Sierra pickup, a 2001 Grand Prix, and a 1988 Kawasaki motorcycle.

In addition, Mark agreed to pay all debts in his name and all debts incurred by the parties during the course of the marriage, except Jeanne's student loan and her Discover credit card debt.

Under the PSA, Jeanne was to be awarded:

- A 2015 GMC Acadia;
- Two lots in Hubbell;
- All rights, title, and interest to a business known as Rose Creek Investment Group, LLC; and
- A judgment in the amount of $265,000, to be paid by Mark no later than March 10, 2017 (described in the PSA as an "equity adjustment").

The PSA did not provide values for any of the identified personal or real property, nor did it indicate the balance of any of the accounts awarded or the debts assumed. Instead, the PSA simply recited the parties were "familiar with the extent of all property owned by the parties . . . , either separately or jointly, and accumulated since their marriage, and both are satisfied that they know the present value of that property."

(a) Jeanne's Testimony

Jeanne testified she did not work outside the home for several years after the triplets were born. She eventually returned to the workforce and, at the time of trial, was employed full time at a medical clinic in Hebron, earning $13.80 per hour. Her annual income in 2016 was about $30,000. She has a small retirement account of less than $6,000. Before trial, she tried to purchase a home but was denied a mortgage due to her low

income. Jeanne testified that assuming the trial court approved the PSA, she planned to use the $265,000 judgment to purchase a home.

Jeanne acknowledged that under the PSA, Mark was getting "significantly more net assets" than she, but Jeanne asked the court to approve the PSA and testified she believed it was fair and reasonable. Jeanne explained that the only real estate she was receiving under the PSA was "the sewing shop," which she described as a "small building in Hubbell." No further evidence was adduced regarding the sewing shop.

Jeanne has rheumatoid arthritis. To manage her pain and symptoms, she takes several prescription medications, one of which costs $4,500 per month. And even after reaching her annual insurance deductible limit, Jeanne pays $120 per month in copays for prescription medication.

Jeanne offered two proposed joint custody child support calculations. Both worksheets listed Jeanne's total monthly income as $2,283. Mark's total monthly income was listed as $16,067 on one worksheet and as $12,456 on the other. Under Jeanne's worksheets, Mark would owe monthly child support of either $1,685 or $1,362, respectively.

Jeanne asked the court to award each party one child tax exemption and to alternate the third exemption between the parties in even and odd years. Regarding alimony, Jeanne estimated her monthly expenses totaled $5,364 and her monthly income was $2,283. She asked the court to order Mark to pay alimony of $3,500 per month for a period of 15 years.

### (b) Mark's Testimony

Mark testified he derives income from three sources: (1) Wiedel Brothers, LLC; (2) farm rent paid to Mark by Wiedel Brothers; and (3) a hay farm he operates by himself. Mark testified that he and his brother formed Wiedel Brothers in 2011 to operate their farming business. They each own 50 percent of the business and share equally in the profits and losses.

The court received into evidence the parties' joint tax returns from 2013 through 2015, as well as the tax returns for Wiedel Brothers for the same years. The gross income reported by Wiedel Brothers was $1,782,789 in 2013, $1,390,680 in 2014, and $1,477,322 in 2015. The parties' joint tax returns show Wiedel Brothers income of $220,639 in 2013, $113,990 in 2014, and $36,280 in 2015 (the year the divorce action was filed). Mark attributed this income fluctuation to declining grain prices. But he also testified that regardless of Wiedel Brothers' income in a particular year, he always draws $6,000 per month (or $72,000 per year) from the business.

Mark also testified that in late 2014 or early 2015, he inherited an additional 576 acres of farmland from his uncle. He estimated the inherited land had a value of about $1.5 million. Mark testified, over objection, that the total value of the real estate he was receiving under the PSA was approximately $2.5 million. There was no testimony regarding the value of any of the other assets or debts addressed in the PSA.

Mark testified that once the decree was entered, he planned to sell some of the farm property he was awarded and use the proceeds to (1) pay the $265,000 judgment to Jeanne, (2) pay off the debts he agreed to assume in the PSA, and (3) pay off the mortgage on the marital home he was to receive under the PSA. Mark estimated that selling some of the property would reduce his farm rental income by about $20,000 annually but would allow him to become basically "debt free."

Mark testified that as part of his farming operation, Wiedel Brothers sometimes prepays for chemicals, seed, or fuel in order to take a tax deduction. In 2015, Wiedel Brothers' tax returns showed it deducted $100,000 more in chemicals than in either of the prior 2 years. Mark also testified that the business stores grain, but no evidence was adduced regarding the estimated amount or value of such grain. Mark admitted that storing grain allows him to control when he receives income.

At trial, Mark offered his own joint custody child support calculation. His proposed worksheet listed Jeanne's total monthly income as $2,500 and his total monthly income as $6,786.56. In calculating his income, Mark used a 3-year average of his farm income that included a straight-line depreciation deduction. Using that approach, Mark estimated his income was $209,165 in 2013, $25,865 in 2014, and $9,286 in 2015, resulting in a 3-year average income of $81,438.67. Using that average income figure, Mark's joint custody worksheet showed he would owe monthly child support of $876. Mark asked the court to award him two child tax exemptions and award Jeanne one.

Mark estimated that his monthly expenses (including his temporary child support and alimony payments) totaled $7,111. On cross-examination, Mark admitted that his plan to sell farmland and pay off his debts would reduce his monthly expenses. Mark also admitted that an award of alimony would be appropriate, but asked that it be set at $500 per month for a period of 5 years.

## 2. Decree

The court entered a decree of dissolution that approved the parties' joint parenting plan, finding it was in the best interests of the children. The decree also approved the PSA, finding it was fair, reasonable, and not unconscionable, and the court incorporated the PSA into the decree.

Regarding child support, the court accepted Mark's income estimates, adopted his proposed child support calculation, and ordered him to pay monthly child support of $876. The decree also ordered Mark to pay 70 percent, and Jeanne to pay 30 percent, of the children's uninsured medical expenses and their expenses related to clothing, schooling, and extracurricular activities. Mark was ordered to pay Jeanne alimony of $2,500 per month for 10 years.

Mark moved for a new trial or, alternatively, to alter or amend the judgment, challenging only the alimony award.

The court overruled Mark's motion, and he timely appealed. We moved the case to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## II. ASSIGNMENT OF ERROR

Mark assigns the district court abused its discretion by awarding Jeanne alimony of $2,500 per month for 10 years.

## III. STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.[2] This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.[3]

## IV. ANALYSIS

[2] In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party.[4] In addition, a court should consider the income and earning capacity of each party and the general equities of the situation.[5]

[3-5] The purpose of alimony is to provide for the continued maintenance or support of one party by the other when

---

[1] Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

[2] *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018).

[3] *Id.*

[4] *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). See, also, Neb. Rev. Stat. § 42-365 (Reissue 2016).

[5] *Anderson v. Anderson, supra* note 4.

the relative economic circumstances make it appropriate.[6] In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result.[7] The ultimate criterion is one of reasonableness.[8] An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record.[9]

In this appeal, Mark does not claim Jeanne failed to show a need for alimony, nor does he suggest this is an inappropriate case for alimony. Instead, he argues the amount of the alimony award was unreasonably high and the duration of the award unreasonably long. We find no merit in either argument.

### 1. Alimony Amount Is Not Unreasonable

In challenging the amount of the award, Mark relies heavily on the fact the trial court adopted his child support worksheet, which calculated his total monthly income at $6,786.56. Using that monthly income figure, Mark argues he will not be able to meet his regular monthly expenses after paying $2,500 in alimony, $876 in child support, and 70 percent of other child-related expenses. He argues the trial court abused its discretion in setting the alimony amount, and he suggests it will force him to live at or below the poverty line.

[6,7] A party's alimony obligation is to be set according to the income he or she has available after his or her child

---

[6] *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006); *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004); *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004); § 42-365.

[7] *Claborn v. Claborn*, 267 Neb. 201, 673 N.W.2d 533 (2004); *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000).

[8] *Id.*

[9] *Bauerle v. Bauerle*, 263 Neb. 881, 644 N.W.2d 128 (2002).

support obligations, if any, have been accounted for.[10] And an alimony award which drives the obligor's net monthly income below the basic subsistence limitation set forth in the Nebraska Child Support Guidelines[11] is presumptively an abuse of discretion unless the court specifically finds that conformity with the basic subsistence limitation would work an "'unjust or inappropriate'" result in that case.[12]

Currently, the basic subsistence limitation under the Nebraska Child Support Guidelines is $1,012 net monthly income.[13] Mark contends that the combination of his child support obligations and his alimony obligation will reduce his net monthly income below this amount. Our de novo review of the record does not support this contention.

Using the income calculations from the child support worksheet adopted by the court, which no party challenges, Mark's total monthly income is $6,786.56; after taxes, his net monthly income is $5,056.56. After accounting for his monthly child support obligation of $876 and his monthly alimony payment of $2,500, Mark is left with net monthly income of $1,680.56, an amount above the basic subsistence limitation.[14]

[8] Mark points out that he was also ordered, under the decree, to pay 70 percent of the children's unreimbursed medical expenses, as well as expenses related to the children's clothing, schooling, and extracurricular activities. His point is well taken, but there was no evidence offered at trial regarding the estimated amount of such expenses, and in the absence of such evidence, Mark's share of these expenses is entirely speculative.[15] When determining whether the payment of certain

---

[10] *Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007).

[11] See Neb. Ct. R. § 4-218 (rev. 2018). Accord *Gress v. Gress, supra* note 10.

[12] See *Gress v. Gress, supra* note 10, 274 Neb. at 702, 743 N.W.2d at 81.

[13] See § 4-218.

[14] *Id.*

[15] See *Gress v. Gress, supra* note 10.

childcare expenses will reduce the obligor's net income below the basic subsistence limitation, a court is not to consider costs that are entirely speculative.[16] Consequently, the record does not support Mark's claim that the combination of his child support and alimony obligations will reduce his net monthly income below the basic subsistence limitation.

Moreover, other evidence in the record supports the reasonable conclusion that Mark has the financial ability to pay the child support, child-related expenses, and alimony ordered in the decree and still meet his other regular monthly expenses. We note the monthly amount of alimony ordered in the decree is the same amount Mark paid in temporary alimony throughout the pendency of the dissolution action. And there was no evidence at trial suggesting any sort of financial strain on his monthly budget as a result of his temporary support payments.

Additionally, under the PSA approved by the court, Mark received the marital home and income-producing farmland valued at approximately $2.5 million. Some of this farmland was inherited, but in weighing a request for alimony, the court may take into account all of the property owned by the parties when entering the decree, whether accumulated by their joint efforts or acquired by inheritance.[17] The fact that Mark has been awarded income-producing farmland valued in excess of $2 million is not irrelevant to the alimony determination.[18] Nor is it irrelevant that he plans to sell some of the farmland to become "debt free."

[9] Finally, we cannot overlook evidence that Mark's income as a self-employed farmer, and his earning potential, is significantly higher than Jeanne's. Alimony is not a tool to equalize the parties' income, but a disparity of income or potential

---

[16] *Id.*

[17] *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016).

[18] See *Binder v. Binder*, 291 Neb. 255, 864 N.W.2d 689 (2015).

income might partially justify an alimony award.[19] Jeanne's monthly income was deemed to be $2,500, and there was no evidence suggesting her earning potential was higher.

Mark, on the other hand, is a self-employed farmer. According to the tax returns, Mark's share of the income from Wiedel Brothers varied from about $220,000 the year before the parties separated to about $36,000 the year the divorce was filed. But even in less profitable years, Mark always drew $72,000 annually from the business. Mark testified that Wiedel Brothers was storing grain at the time of trial, and he admitted that allows him to control when he receives income. He also admitted that his farming operation sometimes pre-pays for chemicals, seed, or fuel to take a tax deduction. And in the year the divorce action was filed, Wiedel Brothers' tax returns showed that the deduction for chemicals was about $100,000 higher than in prior years. We do not highlight this evidence to suggest that Mark has intentionally underreported or manipulated his income, but, rather, to point out that the district court had ample evidence from which to conclude that Mark's farming income, and his earning potential, was sufficient to support a monthly alimony award of $2,500.

## 2. DURATION OF ALIMONY IS
## NOT UNREASONABLE

[10] Mark argues the district court abused its discretion in ordering alimony for a period of 10 years. Regarding the duration of an alimony award, we have recognized that the primary purpose of alimony is to assist an ex-spouse for a period of time necessary for that individual to secure his or her own means of support.[20] Above all else, the duration of an alimony award must be reasonable.[21]

---

[19] *Anderson v. Anderson, supra* note 4.

[20] *Id.*

[21] See *id.*

Mark and Jeanne were married for 14 years before they separated. They share joint custody of three minor children, all of whom still reside at home. Given the length of the parties' marriage, the ages of their minor children, and Jeanne's chronic medical condition and high medication costs, we cannot say the trial court abused its discretion in ordering alimony for a period of 10 years.

## V. CONCLUSION

On this record, we find no abuse of discretion in either the amount or duration of the alimony award. We affirm the district court's decree.

AFFIRMED.

WRIGHT and FUNKE, JJ., not participating.