IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MEELHUYSEN V. MEELHUYSEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MARK C. MEELHUYSEN, APPELLANT,

V.

CASSI A. MEELHUYSEN, NOW KNOWN AS CASSI A. FITZPATRICK, APPELLEE.

Filed September 11, 2018.    No. A-17-866.

Appeal from the District Court for Lancaster County: RODNEY D. REUTER, County Judge. Affirmed as modified.

Matt Catlett for appellant.

No appearance for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Mark C. Meelhuysen appeals from the order of the district court for Lancaster County, which denied his motion for new trial and his motion to alter or amend judgment following the court's decree of dissolution of the parties' marriage. Mark assigns error to certain pretrial rulings, the admission of certain evidence and the exclusion of other evidence, and the court's determination and division of the marital estate. For the reasons set forth herein, we affirm as modified.

## II. BACKGROUND

On July 5, 2016, Mark filed a complaint for dissolution of marriage in the district court. This case was heard by a county court judge upon Mark's request. Pursuant to Neb. Rev. Stat.

- 1 -

§ 25-2740(2) (Reissue 2016), such proceedings are considered district court proceedings, and we have referred to the court throughout this opinion as the district court.

Trial was originally set for November 1, 2016. However, on October 5, the court, on its own motion, referred the matter to mediation and cancelled the November 1 "tentative" trial date. In its order regarding mediation, the court relied on "Lancaster County District Court Practices" and Neb. Rev. Stat. § 43-2937 (Reissue 2016). On November 21, Mark filed a notice of completion of mediation, indicating that the parties had attempted mediation on November 18 but were unable to reach an agreement.

On November 14, 2016, Cassi filed a motion to reinstate health insurance, alleging that Mark had removed her from his health insurance. Cassi asked the district court for an order requiring Mark to reinstate her health insurance coverage until six months after entry of a decree, or in the alternative, to reimburse her "for health insurance premiums she is paying as a result of said unlawful removal of [her] from [his] health insurance."

A hearing on Cassi's motion to reinstate health insurance was held on November 28, 2016. Over Mark's objections, the district court heard oral testimony from Cassi and admitted into evidence a letter from Mark's insurance provider indicating that it had received a written request for coverage termination and that no benefits would be available to Cassi under the plan after October 31. The court also sustained various objections to Mark's cross examination of Cassi. We have set forth the details of the evidence and Mark's objections in the analysis section below.

On November 29, 2016, the district court entered an order granting Cassi's motion to reinstate health insurance. The court ordered Mark "to immediately reinstate the health insurance coverage for [Cassi] as [Mark] had previously provided, or in the alternative, immediately provide health insurance coverage that is equivalent to that same health insurance coverage that [Mark] had previously provided for [Cassi]."

A dissolution trial was held before the district court on February 27 and March 28, 2017. The evidence presented at trial shows that the parties were married in June 2012 and although they separated for various periods during the course of the marriage, they permanently separated in April 2016. When the parties married, Mark was a full-time college student. He graduated in June 2014 with a degree in mechanical engineering. Upon Mark's graduation, the parties moved to Lincoln, Nebraska so that Cassi could pursue further education. Prior to the marriage, Cassi had obtained a bachelor's degree in communications and journalism from Union College in Lincoln. She returned to Union College in 2014 to pursue a bachelor's degree in biology, which she was able to do "essentially tuition free" under a program at the college that allows graduates to pursue a second degree if they return to school within a specified timeframe. Cassi was not enrolled in school at the time of trial, having left school in January 2017.

Although Mark had various employments during the parties' marriage, he had been employed full time at the same engineering company since September 2014, where he was earning about $50,000 per year at the time of trial. Cassi also had various employments during the parties' marriage. At the time of trial, Cassi was employed part time at the University of Nebraska, earning $12 an hour. Cassi planned to move to Utah shortly after trial where she had obtained full-time employment. She anticipated earning $1,875 net income per month. We have set forth further evidence as necessary to our resolution of this appeal in the analysis section below.

On May 24, 2017, the district court entered a decree, dissolving the parties' marriage. In distributing the marital estate, the court did not place specific values on any of the parties' assets, although it did value some of their debts. The court awarded Mark the 2003 Chevrolet Trailblazer and awarded Cassi the 2010 Toyota Prius. The vehicles were awarded "free and clear of any claim" by the other party and "subject to any indebtedness therein as modified by other provisions" of the decree. The court awarded each party their respective checking and savings accounts, awarded Mark his retirement accounts and Cassi her brokerage account, and awarded each party "all household goods, furnishings, electronics, personal belongings and personal effects now in their respective possession." The court ordered the parties to each be responsible for one-half of the following debts: the REI credit/charge card in the amount of $4,500; Union College back rent in the amount of $1,680; and the debt to Liberty First Credit Union for loans on the two automobiles owned by the parties. The court ordered that the parties "hold each other harmless for their respective share" of each of these debts. The court ordered the parties to be responsible for any student loans in their own names. And, the court ordered Mark to be responsible:

> for [Cassi's] outstanding (if any) medical care debts, counseling care debts, and dental care debts, including counseling services debts in the amount of $784.10, dental care debts in the amount of $187.00, and dental care services needed in the amount of $746, that have been incurred and/or recommended by a treatment professional as of the date of this order.

Finally, the court declined to award alimony and ordered the parties each to be responsible for their own attorney fees.

After entry of the decree, Mark filed a timely motion to alter or amend judgment. In the motion, he referenced various evidence, or alleged the lack thereof, about the values of the parties' assets and debts, noted that the district court did not specifically value the assets or all of the debts it divided, and alleged that the court's distribution of the marital estate was inequitable. Mark also filed a separate timely motion for new trial, asking the court to order a new trial on the grounds that there was irregularity in the proceedings, the decree was not sustained by sufficient evidence or was contrary to law, and errors of law occurring at trial excepted to by Mark.

Following a hearing, the district court entered an order on July 27, 2017, denying both Mark's motion to alter or amend judgment and his motion for new trial. The court rejected Mark's argument that it had erroneously allowed Cassi to present evidence at trial regarding her student loan debt, noting that Cassi had listed "Student Loan Statements" in the section of her Exhibit A identifying "Exhibits this party MAY offer." Accordingly, the court determined that Cassi had complied with its pretrial order that trial would be limited to the issues set forth in the respective Exhibit A of each party.

Next, the district court addressed Mark's complaint that there were "discrepancies" in the balances due on the car and student loans and in the values of retirement and investment accounts. The court "presume[d]" that the parties made their loan payments as scheduled and that interest accrued in the normal course of business on these accounts and "declined and continue[d] to decline to micromanage those issues."

Finally, the district court addressed Mark's complaint that it made no specific findings regarding values of certain items of property. The court stated that, while it did not make specific

findings as to the value of certain items, it "certainly considered the value of the couple's assets" in the decree. Again, the court declined "the opportunity to micromanage" discrepancies in the parties' valuations of items noted in Mark's motion to alter or amend. After noting basic principles of law with respect to the equitable division of property in dissolution actions, the court stated that its property division and debt allocation was fair and reasonable. The court acknowledged that it did not apply a rigid mathematical formula to the division of assets and debts, but indicated that it did comply with the general rule to award a spouse one-third to one-half of the marital estate. The court noted that the Toyota Prius comprised a significant portion of the marital assets and awarding it to Cassi (which was consistent with Mark's proposed award of property) greatly impacted and heavily skewed the percentages involved.

Mark perfected a timely appeal to this court.

## III. ASSIGNMENTS OF ERROR

Mark asserts, restated, that the district court erred in (1) ordering the parties to attempt mediation before trial, (2) permitting oral testimony at the hearing on Cassi's motion to reinstate health insurance, (3) receiving exhibit 1 at the hearing on Cassi's motion to reinstate health insurance, (4) refusing to allow cross examination of Cassi at the hearing on her motion to reinstate health insurance as to issues including her average monthly expenses, (5) granting Cassi's motion to reinstate health insurance, (6) refusing to receive Cassi's journal as an exhibit at the divorce trial, (7) permitting Cassi to present evidence not disclosed in or contrary to her Exhibit A, and (8) determining and dividing the marital estate.

Cassi did not submit a brief on appeal.

## IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Wiedel v. Wiedel*, 300 Neb. 13, 911 N.W.2d 582 (2018). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.*

In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Westwood v. Darnell*, 299 Neb. 612, 909 N.W.2d 645 (2018). When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018).

## V. ANALYSIS

### 1. CONSTITUTIONAL ISSUE

Mark asserts that the district court erred in ordering the parties to attempt mediation before trial. Mark argues that because this is not a case involving children it was not properly referred for

mediation under Nebraska's Parenting Act. See Neb. Rev. Stat. § 43-2937 (Reissue 2016) (Parenting Act provision concerning court referral to mediation or specialized alternative dispute resolution). See, also, Rules of Dist. Ct. of Third Jud. Dist. 3-9B (rev. 2016) (providing court may not schedule hearing on motion to set for trial in cases involving children until parties have completed mediation, unless mediation waived). Mark notes Neb. Rev. Stat. 25-2943 (Reissue 2016) (allowing for referral of civil cases to mediation or alternative dispute resolution), but he argues that this statute is contrary to the Nebraska Constitution. Mark concedes that the mediation issue in this case is moot because a trial was eventually held, but he argues that the issue of the constitutionality of § 25-2943 should be addressed under the public interest to the mootness doctrine.

An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action. *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018). An appellate court may choose to review an otherwise moot case under the public interest exception if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination. *Shawn E. on behalf of Grace E. v. Diane S.*, 300 Neb. 289, 912 N.W.2d 920 (2018).

Regardless of the applicability of the public interest exception in this case, we are unable to address the constitutionality of § 25-2943. The Nebraska Court of Appeals cannot determine the constitutionality of a statute, yet when necessary to a decision in the case before it, the court does have jurisdiction to determine whether a constitutional question has been properly raised. *In re Interest of Mischa S.*, 22 Neb. App. 105, 847 N.W.2d 749 (2014). To properly raise a challenge to the constitutionality of a statute, a litigant is required to strictly comply with Neb. Ct. R. App. P. § 2-109(E) (rev. 2014) and to properly raise and preserve the issue before the trial court. *State v. Doyle*, 18 Neb. App. 495, 787 N.W.2d 254 (2010). Although Mark filed the notice with the Supreme Court clerk required by § 2-109, he did not raise the issue of the constitutionality of § 25-2943 before the district court. A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017). Thus, the issue was not properly preserved for appellate review.

2. ISSUES RELATING TO CASSI'S HEALTH INSURANCE

Mark asserts that the district court committed multiple errors in connection with the hearing on Cassi's motion to reinstate health insurance. Specifically, he argues that the court erred in permitting oral testimony at the hearing, receiving exhibit 1, and refusing to allow him to cross-examine Cassi on certain issues. He also argues that the court erred in granting Cassi's motion to reinstate health insurance, and in connection with his final assignment of error, he argues that the court erred in ordering him to pay for certain dental care services needed by Cassi. We set forth the evidence on the issue of Mark's cancellation of Cassi's insurance coverage received both at the hearing on Cassi's motion and at trial. We then address Mark's assignments of error concerning this issue.

(a) Evidence at Hearing on Motion to Reinstate

At the hearing held on Cassi's motion to reinstate health insurance, Cassi was allowed to give oral testimony and introduce a letter from Mark's health insurance provider, over Mark's objections. Mark was allowed to cross-examine Cassi on certain matters.

The evidence at the hearing on Cassi's motion revealed that Cassi had been covered on Mark's health and dental insurance provided through his employer, at a cost of approximately $200 per month, until October 31, 2016. She was notified by Mark approximately two to three weeks prior to this date that he intended to remove her from his health insurance. Cassi received a letter from the provider indicating that it had received a written request for coverage termination and that no benefits would be available to her under the plan after October 31. At the time of the hearing, Cassi was uninsured and did not have insurance available to her. Cassi requested that the district court enter an order requiring Mark to reinstate her on his insurance, or in the alternative, order Mark to pay her $850, which she indicated was the amount it would cost her to obtain health insurance through Union College when she resumed studies in January.

Mark's attorney conducted a thorough cross examination of Cassi, asking her about the employment and earnings of both parties and their periods of shared residence. Cassi confirmed that she had not reimbursed Mark for the cost of her insurance coverage since their separation in April 2016.

The district court sustained Cassi's objections on the basis of relevance to Mark's questions on cross examination about what her average monthly medical expenses had been since April 2016, how often she goes to the doctor, how close she was to obtaining a college degree, whether Mark had paid "any third party" for Cassi's benefit since April 2016, what her monthly expenses were, and whether she had any "present medical conditions."

(b) Evidence at Trial

Mark testified that health and dental insurance were available to him, as well as to his spouse and any dependents, through his employer, and that he enrolled in these plans when he began his employment with the engineering company. The cost to cover Mark was paid by the company, but the cost to cover Cassi under these insurance plans was $220 per month.

Mark testified that he did not try to adjust this coverage at the time of the parties' final separation in April 2016 because "it wasn't open enrollment." He indicated that open enrollment began on November 1 and continued either until the end of December or the end of January. Mark submitted paperwork in October 2016 to change his insurance elections "from employee and spouse to employee only," which change was effective November 1. Mark testified that he thought he would be divorced November 1 because that was the day the trial was originally scheduled. According to Mark, it is not possible to reinstate previous health insurance coverage after the open enrollment period ends. The only way to reinstate coverage for Cassi would be if the parties were still married at the time of the next open enrollment period.

Mark thought he had notified Cassi by email that he intended to remove her from his health insurance coverage 2 or 3 weeks beforehand. He testified that he never received a response from Cassi after notifying her of his decision. Mark did not specifically remember when Cassi was removed from his dental insurance coverage and he did not advise Cassi prior to this removal.

Mark indicated that he had not received any communication from Cassi about who he should pay for her health insurance or dental insurance.

Cassi's trial testimony about the termination of her insurance coverage was generally consistent with that given at the previous hearing on her motion to reinstate. She further testified that she has incurred medical expenses since her coverage had terminated on November 1, 2016. Cassi testified that exhibit 39 was a bill from her dentist for $187 for services she received around the date of the bill, which was January 4, 2017. Cassi testified that exhibit 40 reflected "what [her] dentist said [she] needed to get done for [her] dental health," at a cost of $746. Finally, Cassi testified that exhibit 54 was a bill of $784.10 for counseling services that she attended that were not covered by health insurance due to the termination of coverage. Exhibit 54 reflects services incurred between November 22, 2016 and March 2, 2017. Following Cassi's testimony about these bills, the court received exhibits 39, 40, and 54 over Mark's objections. Cassi asked the court to order Mark to pay for all of these expenses.

Cassi testified that Mark had not reinstated her insurance and that she remained uncovered by insurance as of the time of trial. She testified that she would have to pay a penalty when filing her income tax return due to not being covered for the full year, indicating that the penalty would be $600. Cassi asked the district court to order Mark to pay the $600 penalty on her behalf. She testified that she was not able to afford her own health insurance.

(c) Analysis

Mark's assignments of error concerning the receipt of evidence at the hearing on Cassi's motion to reinstate health insurance and the district court's order requiring him to do so are moot, and the receipt of such evidence was harmless given the receipt of similar evidence at trial. See *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018) (action becomes moot when issues initially presented in proceedings no longer exist or parties lack legally cognizable interest in the outcome of action). See, also, *Worth v. Kolbeck*, 273 Neb. 163, 728 N.W.2d 282 (2007) (erroneous admission of evidence harmless and does not require reversal if evidence is cumulative and other relevant evidence, properly admitted, supports finding by trier of fact).

Although the court ordered Mark to reinstate Cassi's insurance, the evidence at trial shows that he did not comply with this order. Cassi did not file a contempt action, and given that more than six months have passed since entry of the decree, any obligation by Mark to cover Cassi under his health insurance has ended. It is impossible at this point for Mark to go back and provide insurance for Cassi during the period between the court's order ruling on Cassi's motion and six months after entry of the decree. The court did not address the provision of health insurance in the decree other than to specify that for purposes of "continuation of health insurance coverage," the decree became final six months after entry. Finally, inclusion in the marital estate of the counseling and dental bills incurred by Cassi as a result of Mark's cancellation of her insurance coverage was based on evidence presented at trial. We have addressed those marital debts below. We decline to further address Mark's assignments of error with respect to the admission of evidence at the hearing on the motion to reinstate health insurance or the court's order directing him to do so.

### 3. Failure to Receive Cassi's Journal

Mark asserts that the district court erred in refusing to receive exhibit 2 at the divorce trial, which was a copy of Cassi's journal containing various statements about her marriage to Mark. The record indicates that the journal was created in a period from the end of 2014 to approximately the beginning of 2016. Cassi's attorney objected to Mark's offer of exhibit 2 on the basis of relevance, which objection was sustained. On appeal, Mark argues that the court should have received the journal because it was "clearly relevant to the issue of a fair and reasonable division of property." Brief for appellant at 33.

The exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). While questioning Cassi, Mark's attorney asked her questions about how the proceeds from the sale of Mark's premarital vehicle were spent. When Cassi was unable to remember "where all the money went," Mark's attorney asked her to refer to the journal. Cassi acknowledged that she had stated in the journal that $8,000 of the proceeds from the vehicle sale were spent "within the first three days." Cassi acknowledged that she "struggle[s] with spending money." When questioned by her own attorney, Cassi testified further about the sale of Mark's premarital vehicle and the items purchased by the parties with those funds. Mark also testified that he and Cassi had "some difficulties related to spending."

Because substantially similar evidence was admitted without objection regarding spending the proceeds from the sale of Mark's premarital vehicle and Cassi's spending issues, Mark's arguments concerning the district court's exclusion of the actual journal from evidence are without merit.

### 4. Receipt of Evidence Not Disclosed in Cassi's Exhibit A

Mark asserts that the district court erred in permitting Cassi to present evidence not disclosed in or contrary to her Exhibit A. Specifically, Mark argues that the court erred in permitting Cassi to present evidence of her student loan indebtedness, a counseling bill, and bills for dental work completed and dental work needed. In connection with this argument, Mark notes that the values Cassi reported in her Exhibit A for one of the parties' vehicles, two computers, and a camera and lenses were different than the values for those items she presented at trial.

On December 20, 2016, the district court entered an order setting trial for February 27, 2017. In its order, the court specified that trial would be limited to the issues set forth in the respective Exhibit A of each party. The court's order also specified that the parties were to comply with Rule 3-9D(3), which concerns domestic case progression and provides for, among other things, the preparation, filing, and exchange of an "Exhibit A" and preparation of a joint property statement by the parties. See Rules of Dist. Ct. of Third Jud. Dist. 3-9 (rev. 2016). The court further noted that noncompliance with this provision "may result in sanctions being imposed, which may include . . . refusal to permit the non-complying party to adduce evidence or contest any evidence adduced by the other party in regard to property and/or debts, including value or amount."

Cassi filed her Exhibit A on January 3 and Mark filed his amended Exhibit A on February 20. In her Exhibit A, Cassi identified the issues to be tried as division of property and debts, alimony, and reimbursement for medical insurance coverage by Mark to Cassi. Although she did

not list her student loan debt in the debt section of her Exhibit A, she did list "Student Loan Statements" in the section of the document identifying "Exhibits this party MAY offer." In the debt section of her Exhibit A, Cassi identified a particular doctor as a creditor for a counseling debt, although she did not list the amount of that debt.

We find Mark's assertions that the district court erred in allowing Cassi to present evidence of her student loan debt to be without merit. As noted above, in her Exhibit A, Cassi listed "student loan statements" under the section identifying exhibits she may offer at trial.

With respect to Cassi's counseling and dental bills, the issue of division of debt in general, and a counseling debt in particular, were clearly identified in Cassi's Exhibit A as issues for trial. Further, the issue of reimbursement for medical insurance coverage was clearly identified as an issue for trial. Finally, Cassi testified without objection to the content of all three bills at issue. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *Geiss v. Geiss*, 20 Neb. App. 861, 835 N.W.2d 774 (2013). Mark's arguments concerning the admission of evidence concerning these debts is without merit.

Finally, Mark complains about the differences in values for certain items between what was shown on Cassi's Exhibit A and what was presented by her at trial. In her Exhibit A, Cassi valued the parties' Chevy Trailblazer at $1,371, a "Mac Airbook Laptop" computer at $800, an "iMac" computer at $3,000, and a camera and all lenses at a total value of $1,800. At trial, Cassi presented evidence that the Trailblazer had a Kelly Blue Book value of $1,188 and a "private sale value" of $2,404, that the laptop computer had a value $599.97 and the other computer had a value of $1,415, and that the camera and lenses had a total value of $854.90. In addressing Mark's Exhibit A related objections at trial, Cassi's attorney noted that the values provided on Cassi's Exhibit A were estimates, while further research revealed the values presented by Cassi at trial. Clearly, with the exception of the range in values for the Trailblazer, the values Cassi presented at trial were lower values that those represented in her Exhibit A. Mark does not assign error to the receipt of this evidence; rather, he argues it shows that her Exhibit A was not prepared in good faith. Given the lower values represented by the evidence at trial, Mark has not shown how he was prejudiced by the receipt of this evidence. And, as discussed below, we have primarily considered Mark's values in assessing the equitable distribution of the marital estate.

Mark's assignment of error concerning receipt of Cassi's evidence either not disclosed in, or in contradiction with, her Exhibit A is without merit.

### 5. DISTRIBUTION OF MARITAL ESTATE

Mark asserts that the district court erred in determining and dividing the marital estate.

Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. *Westwood v. Darnell*, 299 Neb. 612, 909 N.W.2d 645 (2018). The first step is to classify the parties' property as marital or nonmarital. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Westwood v. Darnell, supra*. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Id.*

Ordinarily, given the conflicting evidence in this case as to the value of certain of the parties' assets, we would consider and give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. See *id.* Here, the court did not value the parties' assets, so we are unable to determine how the court resolved the credibility of the parties' valuations. Thus, as discussed further below, for purposes of our de novo review of the equitable division of the marital estate in this case, we have considered Mark's values, except in those instances where Mark did not provide a value.

### (a) Vehicles

At the time of trial, the parties owned two vehicles, a 2003 Chevy Trailblazer and a 2010 Toyota Prius. Mark valued the Trailblazer at $1,371 and the Prius at $5,590. He proposed that the parties each retain the vehicle currently in their possession, with the Trailblazer going to Mark and the Prius going to Cassi. Cassi agreed with Mark's proposed distribution of the vehicles, but she valued the Trailblazer at somewhere between $1,188 and $2,404 and the Prius at $3,972. The court awarded the Trailblazer to Mark and the Prius to Cassi, but it did not specifically value the vehicles. Mark does not challenge the distribution of the vehicles on appeal; only the division of the Prius debt which we discuss below. As stated above, we adopt Mark's values of the vehicles.

### (b) Bank, Retirement, and Other Accounts

The court awarded each party their own accounts and did not specifically value these assets. Mark does not challenge the distribution of these assets on appeal.

Mark valued his employment retirement account at $167 in his property statement. He testified that his employer contributed $150 to the plan "last year" and that he does not actively contribute to it. At trial, Mark indicated that the current balance was approximately $970 and that the balance was not vested. In his property statement, he valued his checking account at $8.80 and his savings account at $0.79. At trial he testified that he had $200 in his checking account and $0 in his savings account. Both parties valued Cassi's brokerage account at a little over $304, with only a slight variation in their actual specific valuations of this asset. We have considered Mark's valuations in our assessment of the equitable distribution of the net marital estate.

### (c) Household Goods and Personal Property

The court awarded each party all household goods, furnishings, electronics, personal belongings, and personal effects now in their respective possessions. The court did not specifically identify or value the household goods and personal property thus awarded. Mark does not argue that any household goods or personal property in Cassi's possession should have been awarded to him or vice versa. The evidence at trial supports the conclusion that the various items of personal property and household goods were in the possession of the party identified below as of the time of trial.

In his property statement, Mark identified and valued items in his possession: a 27-inch "Apple iMac computer," a tall lamp, one picture frame, and a gray backpack. He also identified and valued items in Cassi's possession: a 15-inch "Apple Macbook Pro" computer; a "D7100 Nikon Camera with 35 mm lens and 75-300mm lens and tripod"; six picture frames; Christmas

lights; a buffet; a short lamp; a blue backpack; a photography backpack; dinnerware, tableware, cookware, and kitchen utensils; a "George Forman grill"; a rice cooker; an induction kettle; a microwave oven; a "Nintendo 64 video game console"; a "Coleman camping grill"; and a purebred Pug dog.

The parties' valuations of these items were identical, expect Cassi presented differing values for the two computers and the camera and lenses. For purposes of our analysis of the equitable division of the marital estate, we have assumed that the items identified herein as being in Mark's possession were awarded to Mark and that the items identified as being in Cassi's possession were awarded to Cassi. And, we have used Mark's valuations for purposes of our assessment of the equitable division of the net marital estate.

Evidence was presented regarding the dog identified above. Cassi disputed Mark's testimony that the dog was marital property, testifying instead that it was a gift to her from Mark. At some point after the parties' final separation and based upon some discussion of the matter by the parties, Cassi took possession of the dog. She testified that she no longer had the dog at the time of trial, having found "a new home" for the dog after she moved into a residence where the dog was not allowed. Cassi testified that she texted Mark before giving away the dog, in case he wanted it, but that he did not reply. In his testimony, Mark indicated that he would have wanted to assume care and control of the dog if he had known that Cassi was no longer able to do so. Since the district court did not specifically address the award of the dog, we are unable to determine how the court resolved the credibility issues involved. For purposes of our analysis of the equitable division of the net marital estate, we have considered the dog as an item of marital property awarded to Cassi.

(d) Debts

Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). The burden to show that a debt is nonmarital is on the party making that assertion. *Id.*

*(i) REI Credit/Charge Card*

Cassi had an REI credit/charge card in her name during the marriage. Cassi testified that in addition to being used to purchase camping gear for a mission trip taken by the parties, they used the card for marital expenses, including utilities, gas, food, clothing, and cash advances. She indicated that one of the cash advances was for rent and related expenses when they moved into their second residence in Lincoln. Cassi asked the district court to include this credit card debt in the marital estate, and the court received a credit card statement reflecting a balance of $4,272.09 as of November 2016. She also testified that Mark had been making the monthly payment on the REI card up until the parties' separation and that she had made various payments on the card since the separation.

Mark largely denied knowledge of how the REI card was used or claimed he did not remember whether it had been used for any marital expenses. His position at trial was that any debt on this card was Cassi's debt and that the card had not been used for "[his] benefit," although he was uncertain whether it had been used for any "marital benefit." Mark acknowledged that the

parties had purchased some camping gear for a mission trip, but he could not remember whether the REI card had been used for that purchase. The parties both testified that they had other charge or credit cards during the marriage that were paid off with marital funds.

The district court included the REI card debt in the marital estate, valuing it at $4,450. The evidence about this debt was conflicting, and by including it in the marital estate, the court clearly credited Cassi's testimony that this charge card was used for marital purposes. The court did not abuse its discretion in doing so. Mark challenges the court's determination that each party should pay half of this debt, arguing that it is "a practical and logistical nightmare." Brief for appellant at 43. The court left how best to accomplish this up to the parties. As such, the parties may either work together to pay off this debt or seek their own financing solutions to pay their respective portion of this debt. We find no abuse of discretion in the court's division of this debt.

### (ii) Union College Back Rent

The district court ordered the parties to each be responsible for one-half of this debt in the amount of $1,680.

The evidence presented at trial shows that at the time of the parties' final separation, they were living in a Union College student housing apartment. They began living there in January 2016. Cassi moved out of the apartment on April 18, 2016, and Mark continued to reside in this apartment until the end of July 2016. Mark paid the rent and utilities for this apartment from May through July when he resided there alone. With respect to any past due rent balance for the period of January through April, Mark agreed that there may be an outstanding balance, but he disputed whether he should be responsible for a portion of any such balance. Cassi testified that a debt of $1,680 was still owed to Union College for this apartment. She indicated that she could not attend school until that debt was paid for and asked that Mark be responsible for this debt.

Clearly, Mark's assertion that Cassi "presented no evidence of such a debt" is without merit. Brief for appellant at 38. The district court did not abuse is discretion in including this debt as a marital debt of the parties or in valuing that debt at $1,680.

### (iii) Vehicle Loans

The evidence at trial showed that both the Trailblazer and the Prius were subject to liens, and the parties were jointly liable for those encumbrances. In his property statement, Mark valued the Trailblazer loan at $681.27 and proposed that he pay that debt; he valued the Prius loan at $7,371.07 and proposed that it be assigned to Cassi. Cassi valued the Trailblazer loan at approximately $400 and testified that she currently owed $7,300 on the Prius. Cassi asked that the Trailblazer debt be assigned to Mark. She testified that she could not afford to pay the Prius loan "on [her] own" and asked that Mark be jointly responsible for that debt. However, she acknowledged that she had been making the payment on the Prius loan since the parties separated.

The district court did not value the debts on the parties' vehicles, but ordered the parties to each be responsible for one-half of the debt on the two automobiles. Mark again argues that this presents a "logistical nightmare." Brief for appellant at 43. For purposes of our assessment of the equitable division of the net marital estate, we have considered Mark's values for the vehicle loans. As discussed further below, we agree that the court abused its discretion in its division of the net

marital estate, and we modify the decree to assign the entire debt associated with the Prius ($7,371.07) to Cassi and the debt associated with the Trailblazer to Mark.

### (iv) Cassi's Counseling and Dental Debts

We have set forth the evidence concerning these debts above and do not repeat that evidence here. The district court included in the net marital estate debts of $784.10 for counseling services, $187 for dental care provided to Cassi, and $746 for dental care needed by Cassi. Mark does not challenge inclusion of the first two debts, and we find no abuse of discretion in the inclusion of any of these debts based upon our de novo review. Mark argues, however, that the court's language concerning these debts is vague, making compliance with this portion of the court's order "literally impossible." Brief for appellant at 43. We agree and accordingly modify some of the language used by the court in that portion of the decree. The court found that Mark "shall be responsible for [Cassi's] outstanding (if any) medical care debts, counseling care debts, and dental care debts," including the three debts referenced above, "that have been incurred and/or recommended by a treatment professional as of the date of this order." Because Cassi did not testify to or present evidence of any other outstanding medical, counseling, or dental debts, we modify the decree to provide that Mark shall only be responsible for Cassi's outstanding counseling services debt in the amount of $784.10, her outstanding dental care debt in the amount of $187, and her dental care services needed in the amount $746. If Cassi's needed dental work costs more than $746, Mark shall only be responsible for $746 of the total, consistent with the evidence at trial.

### (v) Student Loan Debts

The record shows that both parties incurred student loan debt during the marriage.

Mark testified that his student loan debt upon graduation was $19,200 and that $17,800 of that amount was expended for the parties' living expenses. In his property statement admitted at trial, Mark valued his student loan debt at $15,506.58. Mark asked the court that his student loan debt "remain in [his] name." He agreed that Cassi incurred student loan debt during the marriage and proposed that such debt be allocated to her.

With respect to her own student loan, Cassi testified that she borrowed $9,000 during the marriage. Cassi affirmed that her tuition at Union College was paid for and indicated that her student loan money was used for marital expenses. Over Mark's objections, the court received an exhibit showing the balance on Cassi's student loans borrowed during the marriage was $7,599.

We have already addressed Mark's arguments with respect to Cassi's Exhibit A above, and the district court clearly credited Cassi's testimony that her student loan money was used for marital purposes. We find no abuse of discretion in the inclusion of the parties' student loan debts incurred during the marriage in the marital estate. We have included these debts in our analysis of the equitable division of the marital estate, and for purposes of our analysis have considered Mark's valuation of his loan and Cassi's valuation of her loan.

In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). In addition to the specific criteria listed in Neb. Rev. Stat. § 42-365 (Reissue 2016), in dividing property and considering alimony upon a dissolution of marriage, a court should consider the income and earning capacity of each party and the general equities of the situation. *Osantowski v. Osantowski, supra*. As a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Id.*

In ruling on Mark's postjudgment motions, the district court stated that while it did not apply "a rigid mathematical formula," its property division and debt allocation was fair and reasonable and complied with the general rule to award a spouse one-third to one-half of the marital estate. Our own calculations do not support such a conclusion. Having conducted our own independent analysis, we disagree with the court's assertion that its division of the net marital estate fits within the one-third to one-half rubric.

The following chart shows the district court's division of the marital estate, and for purposes of our analysis we have used the values (rounded to whole dollar figures) reflected in exhibit 32, the property statement Mark submitted at trial, except for those items not valued by Mark. We have used Cassi's values (rounded) for her student loan, the Union College rent, the REI card, and her counseling and dental debts.

| | Awarded to Mark | Awarded to Cassi |
|---|---|---|
| Chevy Trailblazer | $1,371 | |
| Prius | | $5,590 |
| Personal property | $946 | $2,804 |
| Bank accounts | | $10 |
| | $2 | |
| Mark's retirement account | $167 | |
| Cassi's brokerage account | | $305 |
| REI card | ($2,225) | ($2,225) |
| Union College back rent | ($840) | ($840) |
| Trailblazer debt | ($341) | ($341) |
| Prius debt | ($3,686) | ($3,686) |
| Cassi's counseling debt | ($781) | |
| Cassi's dental debt | ($187) | |
| Cassi's needed dental | ($746) | |
| Mark's student loan | ($15,507) | |
| Cassi's student loan | | ($7,599) |
| TOTALS TO EACH PARTY: | ($21,822) | ($5,990) |
| NET MARITAL ESTATE: | ($27,812) | |

Using the combination of Mark's and Cassi's rounded values as indicated above, the district court's division results in Mark being awarded 78 percent of the negative net marital estate and Cassi being awarded 22 percent of the negative net marital estate. A similar result is reached if we use only Cassi's rounded values. Regardless of whether we use Mark's values or Cassi's values, the division is skewed in Cassi's favor, and falls outside of the one-third to one-half rubric, unless we modify as indicated above and order the parties to each be responsible for the entire debt associated with the vehicle awarded to them. As set forth above, we have modified the decree in that regard, requiring Cassi to be responsible for the entire Prius debt. That modification, using the rounded numbers above, results in a total value awarded to Mark of −$18,477 (66.44 percent of the negative net marital estate) and a total value awarded to Cassi of −$9,335 (33.56 of the negative net marital estate). We otherwise find no abuse of discretion and affirm the court's division of the net marital estate in all other regards.

## VI. CONCLUSION

For the reasons set forth above, we affirm as modified.

AFFIRMED AS MODIFIED.

- 15 -