Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/09/2019 09:06 AM CDT

HARLAN D. BURGARDT, APPELLEE AND CROSS-APPELLANT,
v. SHIRLEY L. BURGARDT, APPELLANT
AND CROSS-APPELLEE.

___ N.W.2d ___

Filed April 9, 2019.    No. A-17-1116.

1. **Divorce: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. When evidence is in conflict, an appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

4. **Divorce: Property Division.** The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.

5. ____: ____. As a general rule, all property accumulated and acquired by either party during the marriage is part of the marital estate, unless it falls within an exception to the general rule.

6. ____: ____. Setting aside nonmarital property is simple if the spouse possesses the original asset but can be problematic if the original asset no longer exists.

7. ____: ____. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. If the separate property remains segregated or is traceable into its product, commingling does not occur.

8. **Property Division: Proof.** When there is a dispute regarding whether certain property ought to be characterized as marital property, the burden of proof rests with the party claiming that property is nonmarital.

9. **Divorce: Property Division: Pensions.** Generally, amounts added to and interest accrued on retirement accounts which have been earned during the marriage are part of the marital estate. Contributions to retirement accounts before marriage or after dissolution are not assets of the marital estate.

10. **Property Division: Taxes.** Income tax liability incurred during the marriage is one of the accepted costs of producing marital income, and thus, income tax liability should generally be treated as a marital debt.

11. **Divorce: Property Division: Alimony.** In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party.

12. **Alimony: Appeal and Error.** In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result.

13. **Alimony.** The primary purpose of alimony is to assist an ex-spouse for a period of time necessary for that individual to secure his or her own means of support.

14. ____. The ultimate criterion in determining an alimony award is reasonableness.

Appeal from the District Court for Adams County: Terri S. Harder, Judge. Affirmed in part, and in part reversed and remanded with directions.

Richard L. Alexander, of Richard Alexander Law Office, for appellant.

Nicholas D. Valle, of Langvardt, Valle & James, P.C., L.L.O., for appellee.

Moore, Chief Judge, and Pirtle and Arterburn, Judges.

Arterburn, Judge.

## I. INTRODUCTION

Shirley L. Burgardt appeals from the decree of dissolution entered by the district court for Adams County, which dissolved her marriage to Harlan D. Burgardt. On appeal, she argues that the district court abused its discretion in finding portions of Harlan's 401K and inherited farm were nonmarital property. She also argues that the alimony award she received is insufficient. Harlan cross-appeals, arguing that the district court abused its discretion by not dividing certain tax liabilities between the parties and by ordering him to pay excessive alimony. We affirm the district court's findings with regard to the amount of alimony awarded to Shirley. However, we hold that the court erred in finding that Harlan proved the amount of his inheritance or the value of any premarital interest he may have had in his 401K. We also find that the district court should have considered the postseparation payment of 2015 tax estimates and the refunds received thereon in dividing the marital estate. We therefore reverse as to the district court's division of property.

## II. BACKGROUND

Harlan and Shirley were married on April 12, 1992. No children were born from the marriage, but Shirley and Harlan each had children from previous relationships. Harlan, age 73 at the time of trial, has various medical issues related to his back, leg, and knee and also experiences high blood pressure and chronic obstructive pulmonary disease. He testified that he requires some assistance getting dressed due to those issues. Harlan also testified that he has very poor hearing and wants to purchase hearing aids but feels he cannot afford them. Harlan takes a variety of prescription medications and testified that there are some additional medications he cannot afford and does not purchase even though they are prescribed to him. Harlan's daughter, son-in-law, and two grandsons now live with him and help with household chores and other tasks, but

they maintain mostly separate expenses. They do not pay rent to Harlan.

Shirley, age 66 at the time of trial, also has various medical issues. She had a "5 bypass heart surgery" and has encountered subsequent complications. Shirley testified that she will not be able to work again in the future due to her medical issues. She has lived with her son since her bypass surgery in April 2015. Shirley worked during the first 14 years of the marriage, primarily in hardware stores. She stopped working when Harlan retired and they moved back to Nebraska from Colorado in 2006.

Harlan began working for what is now called Kinder Morgan in April 1978. He started out as a laborer but was promoted to "junior engineer" after receiving additional training and education throughout his career. The focus of his work throughout his career was corrosion control. Harlan initially worked in Lakin, Kansas, but was transferred to Hastings, Nebraska. He met Shirley while living in Hastings. Shortly after the parties married in 1992, Harlan accepted a transfer to Glenwood Springs, Colorado, where he worked until retiring in May 2006. Kinder Morgan provided Harlan with retirement benefits in the form of both a pension plan and a 401K.

Harlan was given three options related to his pension benefits. The first option paid the most but only paid Harlan while he was alive. The second option paid less than the first and would pay him during his lifetime and then pay Shirley half as much from the date of Harlan's death until the date of her death if she survived him. The third option, which Harlan ultimately chose, paid less than either of the two previous options. It pays Harlan during his lifetime and then will pay Shirley an equal amount from the date of Harlan's death until the date of her death. Harlan noted that this pension benefit designation cannot be changed even due to divorce or remarriage. He testified that he made that election because he did not want Shirley to "end up totally broke."

Throughout Harlan's career, including for the period of time before his marriage to Shirley, contributions were made to his 401K. Harlan testified that his 401K was valued at $130,000 on the date of his marriage to Shirley in 1992, stating that the number "sticks out in my mind just plain as day." However, he acknowledged that there was no documentation to support this valuation and stated that he had contacted the company but was told it did not keep records dating back to 1992. Harlan also testified that he did not begin contributing to the 401K until 1985. Shirley testified that she was unaware of any 401K belonging to Harlan that was valued at $130,000 at the time of their marriage.

In 2006, Harlan's father died, leaving Harlan an interest in a quarter section of farmland including the farmstead in Kansas referred to as the "home farm." Although a "Transfer on Death Deed" transferred the home farm from Harlan's father to Harlan and his sister only, Harlan and his two living siblings agreed that the entirety of their father's intestate estate should be divided into four equal portions, one for each of the siblings and a fourth for the two sons of their deceased brother. Harlan testified that his inherited share translated into a $60,000 credit, which he combined with cash to buy the home farm in its entirety at a total cost of $157,500. On cross-examination, Harlan acknowledged that he used marital assets to purchase the portion of the home farm that he had not inherited.

When Harlan retired from Kinder Morgan in 2006, he converted his 401K into a traditional IRA. That account was valued at $445,000 in 2010. Harlan subsequently liquidated the IRA, using the proceeds to purchase a second farm in 2010, improve the home farm, purchase a compact tractor and other equipment, and purchase gold and silver coins.

Harlan and Shirley traveled back and forth between their residence in Holdrege to the home farm from 2006 to 2010, fixing up the property together and moving into the house.

Harlan testified that improvements included the addition of fencing, a new irrigation well, and irrigation equipment. Near the time of the parties' separation, Harlan and Shirley sold the home farm and their farm equipment for a total of $358,000 in July 2015, depositing the proceeds into their joint account. Harlan subsequently withdrew $190,000 from the joint account and deposited it into his separate account at a different bank. He also withdrew $168,000 from the joint account and deposited it into his separate account at a credit union. Harlan acknowledged that he basically emptied their joint account and placed all the funds into accounts in his name alone.

Earlier, at the end of 2014, Harlan and Shirley sold the second farm, which was reflected by a $151,492.95 deposit into their joint account. Shirley testified that the proceeds from selling the second farm were used to purchase a home in Hastings. According to Harlan, Harlan and Shirley purchased the Hastings home for $135,000. Harlan moved there in the summer of 2015 and continues to reside there.

Harlan and Shirley filed a joint tax return in 2015. Based on estimates from a tax preparation company, Harlan testified that they made tax prepayments of $31,400 to the federal government, $40,200 to the State of Kansas, and $3,000 to the State of Nebraska. A withdrawal of $31,400 was made from Harlan's account at the credit union on September 2. A withdrawal of $3,000 from the same account was made on August 31. The parties' tax return demonstrates an estimated tax paid of only $10,291, however. The parties' total prepayments and other withholdings overestimated their tax liability, and Harlan and Shirley later received refunds, which they split equally.

On August 4, 2015, Harlan filed a complaint for legal separation from Shirley. In her answer and cross-complaint filed on August 18, Shirley alleged that the marriage was irretrievably broken. Shirley filed a motion for temporary orders on August 18, requesting, among other things, that Harlan be ordered to pay her temporary alimony and to pay temporary attorney fees

for her. The court granted Shirley's motion on September 25, and ordered Harlan to pay her $900 per month in temporary alimony and $5,000 in temporary attorney fees.

On September 26, 2016, Shirley filed an amended cross-complaint seeking to have the marriage dissolved. Trial on the complaint for dissolution of marriage occurred in June and July 2017. The court dissolved Harlan and Shirley's marriage on September 5. As relevant in the present appeal, in the decree of dissolution, the district court ordered Harlan to pay Shirley $200 of alimony each month for 60 months or until either party's death, whichever occurs first. In dividing their property, the district court awarded Harlan $130,000 as the nonmarital value of his 401K plus $60,000 as the nonmarital value of his inherited share of the home farm. The court did not allocate any portion of the tax liability created by the sale of the farms to Shirley.

Shirley now appeals, and Harlan cross-appeals.

## III. ASSIGNMENTS OF ERROR

On appeal, Shirley argues that the district court erred by finding that $130,000 of Harlan's 401K was nonmarital property and that $60,000 of the inherited home farm was nonmarital property. She also argues that the district court erred by awarding her insufficient alimony.

In Harlan's cross-appeal, he argues the district court erred by not allocating the tax liability that was created by the sale of farms and property and by awarding Shirley excessive alimony.

## IV. STANDARD OF REVIEW

[1,2] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Westwood v. Darnell*, 299 Neb. 612, 909 N.W.2d 645 (2018). This standard of review applies to both the trial court's determinations regarding division of property and alimony. See *id*. A judicial abuse of discretion exists if the reasons or rulings

of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016).

[3] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## V. ANALYSIS

### 1. Property Distribution

[4] The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Lorenzen v. Lorenzen*, 294 Neb. 204, 883 N.W.2d 292 (2016). See Neb. Rev. Stat. § 42-365 (Reissue 2016). Under § 42-365, the equitable division of property is a three-step process. *Lorenzen v. Lorenzen, supra*. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. *Id*. The second step is to value the marital assets and marital liabilities of the parties. *Id*. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Lorenzen v. Lorenzen, supra*.

[5-8] As a general rule, all property accumulated and acquired by either party during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Westwood v. Darnell, supra*. Exceptions include property that a spouse acquired prior to the marriage or by gift or inheritance. See *id.* Setting aside nonmarital property is simple if

the spouse possesses the original asset but can be problematic if the original asset no longer exists. *Brozek v. Brozek, supra*. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. *Id*. If the separate property remains segregated or is traceable into its product, commingling does not occur. *Id*. When there is a dispute regarding whether certain property ought to be characterized as marital property, the burden of proof rests with the party claiming that property is nonmarital. See *id.*

[9] Generally, amounts added to and interest accrued on retirement accounts which have been earned during the marriage are part of the marital estate. *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015). Contributions to retirement accounts before marriage or after dissolution are not assets of the marital estate. See *id.*

In the present case, Shirley argues the district court erred in finding that $130,000 of Harlan's 401K and $60,000 of the home farm's worth were nonmarital property. Harlan argues in response that the district court did not abuse its discretion in either determination. Based on our de novo review, we find that Harlan did not meet his burden of proving that his 401K contained $130,000 as of the date of the marriage and did not prove the amount he inherited from his father.

(a) Premarital 401K Contributions

Harlan claims that $130,000 existed in his 401K as of the date of his marriage to Shirley in 1992 and that this amount should be set off to him as nonmarital property. The problem with Harlan's claim is that it is based solely on his own recollection. Harlan failed to adduce any documentation whatsoever regarding when the 401K came into existence, what contributions were made to it by him or his employer, and how it was invested or grew over the years. The only documentation of its value at retirement comes by way of a bank record evidencing its rollover into an IRA on January 1, 2010. Harlan

testified that he called his former employer and was told that they had no records that would demonstrate the balance of his 401K in 1992. However, there was no indication that he could not retrieve pay records that would demonstrate his income from 1985 (when he states he started his 401K contributions) to 1992. Such company pay records could demonstrate what his income was and any deductions made therefrom, as well as any company contributions. Failing specific information, there is also no testimony indicating that he could not obtain from his employer information that would generally explain how contributions to the company 401K retirement program were computed and withheld. In addition, no tax or Social Security records were provided that would give us any idea what Harlan's salary was during the years leading up to the parties' marriage. As Shirley points out, it is difficult to accept, given the nature of Harlan's employment, that he could amass $130,000 in his 401K by 1992, particularly when he did not start contributing until 1985. Harlan contends that the $130,000 figure is clear in his mind, but he struggled and even changed his testimony with regard to a number of other topics during the course of his testimony. While we do not doubt that Harlan had a 401K plan prior to the marriage, we cannot find that Harlan sufficiently proved the value of his 401K was $130,000 prior to the marriage.

In *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016), the trial court found that crops in storage and the balance of the husband's bank accounts that held the proceeds of past crop sales as of the date of marriage should be awarded to him as nonmarital property. The Nebraska Supreme Court reversed the trial court judgment, finding that the husband had not definitively identified the values of his premarital assets. As a result, since one cannot trace an unknown value of assets, the court found it to be unreasonable to set off a value of assets that is not proved. See, also, *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

In *Onstot v. Onstot*, 298 Neb. 897, 906 N.W.2d 300 (2018), the husband testified that he purchased the family home 9 years prior to the marriage. He testified to the purchase price and what he believed to be the amount of the original mortgage. He then testified to what he believed to be the value of the home on the date of marriage but provided no evidence regarding the balance of the mortgage at that time. No documentation was provided to confirm his testimony regarding the date of purchase, the purchase price, the amount of the mortgage, or the value of the house at the time of the marriage. The Supreme Court in *Onstot* found that the equity in the residence at the time of the parties' marriage would be a nonmarital asset, which, if established, should be set aside to the husband. However, given the lack of documentation that any equity existed at the time of the parties' marriage, the Supreme Court found that the husband failed to meet his burden of proving that the property was a nonmarital asset. *Id*.

The present case is similar to *Brozek* and *Onstot*. Harlan's testimony, standing alone, is insufficient to definitively identify the value of his premarital asset. As such, we find that the district court erred in setting off $130,000 in assets as nonmarital property to Harlan based solely on his testimony. Therefore, the entirety of the 401K and the assets to which those funds have been transferred must be considered marital in nature.

### (b) Inherited Portion of Home Farm

The district court also found that Harlan inherited $60,000 from his father which could be set off to him as nonmarital property. Ordinarily, inherited property is classified as nonmarital property. See *Westwood v. Darnell*, 299 Neb. 612, 909 N.W.2d 645 (2018). If the inheritance can be identified, it is to be set off to the inheriting spouse and eliminated from the marital estate. *Schuman v. Schuman*, 265 Neb. 459, 658 N.W.2d 30 (2003). Our courts have noted that the law does not require a complete segregation or dollar-by-dollar tracing of inherited

funds. See, generally, *Marshall v. Marshall*, 298 Neb. 1, 902 N.W.2d 223 (2017).

Harlan testified that the value of his inherited share of the home farm was $60,000. A "Transfer on Death Deed" was received into evidence demonstrating that Harlan and his sister inherited the home farm upon his father's death. Harlan and Shirley then purchased the entirety of the home farm utilizing his inheritance coupled with marital funds derived from the sale of the parties' house in Colorado. The total value of the home farm at purchase was $157,500. Therefore, unlike the 401K, Harlan has presented documentation which supports his claim that he did receive an inheritance. However, he presented no documentation which in any way establishes or corroborates the amount of that inheritance. Consequently, he has again failed to meet his burden of proof to definitively identify the value of his claimed premarital asset as required by *Brozek* and *Onstot.* As a result, we must find that he has failed to meet his burden of proof and must reverse the district court's finding that $60,000 should be set off to him as nonmarital inherited property.

## 2. TAX LIABILITY

[10] On cross-appeal, Harlan argues that the district court erred in not allocating between the parties the tax liability that was created by selling the farms and equipment. Income tax liability incurred during the marriage is one of the accepted costs of producing marital income, and thus, income tax liability should generally be treated as a marital debt. *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000).

Evidence adduced at trial showed that Harlan and Shirley prepaid estimated taxes of $31,400 to the federal government, $10,291 to the State of Kansas, and $3,000 to the State of Nebraska based on the sale of the home farm. Additional withholdings are reported on their 2015 federal tax return. Because they overpaid, Harlan and Shirley received refunds of $12,351 from the federal government, $1,856 from Kansas, and $2,990

from Nebraska which they split evenly. Evidence adduced at trial also shows that the tax estimates were made from marital funds. However, the evidence also demonstrates that the estimates were paid from an account that was valued by the parties and the court as of July 22, 2015. The court divided the amount of the account evenly between the parties but did not account for the fact that the amount of funds in the account had been subsequently reduced by the payment of a marital obligation. The effect of not allocating the tax liability is that Harlan's share is reduced by the amount of the tax estimates paid less the portion of the refund he received. Conversely, Shirley does not share in the liability but has received half of the refund. We find that the court erred in failing to allocate the tax liability paid.

The evidence demonstrates that a total of $44,691 was paid in estimates. The total refund received was $17,197. This refund was split evenly by the parties. The net tax liability is $27,494. Divided by two, each party's share of the net liability is $13,747. This amount should have been shown as a deduction from each party's portion of the marital estate. On remand, we order the district court to include this deduction in the division of property.

### 3. ALIMONY AWARD

[11] "The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate." § 42-365. In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. *Wiedel v. Wiedel*, 300 Neb. 13, 911 N.W.2d 582 (2018). See, also, § 42-365. In addition,

a court should consider the income and earning capacity of each party and the general equities of the situation. *Wiedel v. Wiedel, supra*.

[12-14] In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Bergmeier v. Bergmeier*, 296 Neb. 440, 894 N.W.2d 266 (2017). The primary purpose of alimony is to assist an ex-spouse for a period of time necessary for that individual to secure his or her own means of support. *Id*. Thus, the ultimate criterion is one of reasonableness. *Id*.

Shirley argues that the district court abused its discretion by awarding insufficient alimony that did not account for the couple's length of marriage, the disparity in their incomes, or her inability to seek employment due to health ailments. Harlan argued in response and on cross-appeal that Shirley overstated her expenses, received a sizable property equalization payment, and will benefit from Harlan's pension if she survives him. We find, particularly in light of our findings above—which result in Shirley's receiving a greater value of marital assets—that there was no error in the district court's award.

The evidence demonstrates that at the time of trial, Harlan had a larger monthly income than Shirley. The combination of Social Security income, his portion of his pension, a $100 per month insurance payment, and a historical average of $300 per month in oil royalties put Harlan's average monthly income at approximately $2,700. Deducting the $200 per month alimony award places Harlan's monthly net income at $2,500. In contrast, Shirley's income, taking into account the order of the court, is much lower. Combining her Social Security income with her portion of Harlan's pension and the $200 alimony award places her at approximately $1,035 in monthly income. However, several other factors must figure into our assessment of the district court's award.

First, we must consider other income available to Shirley. In the decree of dissolution, the district court awarded Shirley significant cash assets. That amount will be supplemented by over $81,000 by virtue of our decision herein. In addition, Shirley was awarded a portion of the coins the parties invested in. Therefore, she has a significant amount of assets from which additional income can be produced. While Harlan also has cash and precious metals from which additional income may be drawn, his income-producing assets are not as significant given his ownership of a house and the decision of this court.

The evidence further established that Shirley has twice been a part of decisions that deferred present income to the future. The evidence established that the parties opted to take the lowest possible pension amount when Harlan retired in exchange for Shirley's receiving the same amount if she survives Harlan. The parties also agreed that the oil royalty payments held in their joint names should all go to Harlan in return for his being awarded those royalties as an asset in the division of property. Shirley will be entitled to those royalties for the remainder of her life if Harlan predeceases her.

The evidence also demonstrated that Harlan has significant costs related to his health. While some of the expenses enumerated on his expense list may be inflated, it is apparent that at the time of trial, Harlan's monthly expenses were much higher than Shirley's. It is difficult to ascertain what Shirley's expenses are. While reference was made in the testimony to a listing of expenses, this exhibit was never offered and does not appear in our record. The evidence does establish that Shirley lives in the home of her son. While she has experienced serious health issues in the past, her only medication at the time of trial was a daily "baby aspirin."

Finally, we note that we must also consider that Shirley received $900 per month in temporary alimony for nearly 2 years prior to trial. Given the totality of the foregoing factors,

we find no error in the district court's award of alimony, particularly given our findings regarding property division.

## VI. CONCLUSION

Based on our de novo review of the record, we find that the district court erred in finding that a portion of Harlan's 401K constituted nonmarital property and thus reverse that determination. We direct the district court to award half of the $130,000 previously set off to Harlan as nonmarital property to Shirley. We further find that the district court erred in finding that Harlan's inheritance constituted nonmarital property. We direct the district court to award to Shirley half of the $60,000 previously set off to Harlan as nonmarital property. We also find that the net tax liability of $27,494 should be divided evenly between the parties and deducted from the parties' shares of the marital property. We affirm the district court's award of alimony.

Affirmed in part, and in part reversed
and remanded with directions.