Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/24/2020 09:08 AM CST

Harlan D. Burgardt, appellee and
cross-appellant, v. Shirley L.
Burgardt, appellant and
cross-appellee.

___ N.W.2d ___

Filed November 1, 2019.    No. S-17-1116.

1. **Divorce: Appeal and Error.** Appeals in domestic relations matters are heard de novo on the record, and thus, an appellate court is empowered to enter the order which should have been made as reflected by the record.

2. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

3. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

4. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

5. **Evidence: Proof.** Unless an exception applies, the burden of proof in civil cases requires only the greater weight of the evidence.

6. ____: ____. There is no general rule of evidence that a party must produce the best evidence which the nature of the case permits.

7. **Evidence: Witnesses: Testimony.** A witness' testimony, like a document, is a kind of evidence.
8. **Divorce: Property Division.** The first step in the equitable division of property is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage.
9. **Divorce: Property Division: Pensions.** Contributions to retirement accounts before marriage are not assets of the marital estate.
10. **Divorce: Property Division: Presumptions.** Gifts and inheritances, even when received during the marriage, are presumed to be nonmarital.
11. **Divorce: Property Division: Proof.** In a marital dissolution proceeding, the burden of proof rests with the party claiming that property is nonmarital.
12. **Divorce: Property Division: Proof: Testimony.** A nonmarital interest in property may be established by credible testimony.
13. **Trial: Witnesses: Evidence.** Triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof.
14. **Divorce: Property Division: Evidence: Proof.** The value of the nonmarital portion of an asset must be established by the greater weight of the evidence.

Petition for further review from the Court of Appeals, Moore, Chief Judge, and Pirtle and Arterburn, Judges, on appeal thereto from the District Court for Adams County, Terri S. Harder, Judge. Judgment of Court of Appeals reversed, and cause remanded with direction.

Richard L. Alexander, of Richard Alexander Law Office, for appellant.

Nicholas D. Valle, of Langvardt, Valle & James, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

On appeal from a district court's dissolution of marriage, the Nebraska Court of Appeals reversed the determinations

that a portion of the husband's 401K and proceeds from an inheritance constituted nonmarital property.[1] We disapprove of two imperatives articulated by the Court of Appeals: nonmarital property must be proved by documentary evidence and its value must be "definitively" established. Because we cannot say the district court abused its discretion in setting off property as nonmarital in accordance with the husband's testimony, we reverse the decision of the Court of Appeals and remand the cause with direction.

## II. BACKGROUND

### 1. Evidence at Trial

Harlan D. Burgardt and Shirley L. Burgardt married in 1992. The district court dissolved their marriage in 2017. On further review, we focus on two items of property: the portion of a 401K accumulated before marriage and the proceeds from an inheritance. At this stage, neither party otherwise contests the division of property. We limit our recitation of evidence accordingly.

### (a) 401K

In 1978, Harlan began working for a natural gas distribution company. Fourteen years later, he married Shirley. And 14 years after that, Harlan retired. Through his employment, he had a 401K account.

Harlan believed that he began contributing to the 401K in "about '85." He testified that on the date of his marriage in 1992, his 401K was valued at $130,000. Upon questioning, he stated that the number "sticks out in my mind just plain as day." Although Harlan tried to obtain documentation from his former employer to support the value, the company did not keep records dating back to 1992.

Shirley testified that she was not aware of any 401K that Harlan had prior to marriage worth $130,000. Thus, she

---

[1] *Burgardt v. Burgardt*, 27 Neb. App. 57, 926 N.W.2d 452 (2019).

valued the premarital portion at $0 on the parties' joint property statement. She had no evidence to dispute that Harlan contributed to the 401K prior to marriage.

In 2010, Harlan withdrew the funds from the 401K and "moved it into an IRA into a cash fund" solely in his name. A bank statement shows a beginning balance for the IRA on January 1 to be $445,486.12. The money was later spent on four major purchases or projects. It was used to purchase the "other farm," which was titled in both parties' names. Money was used for improvements to the "home farm," which contained a house where the parties once lived. Harlan also used money from the IRA to buy equipment. The equipment was "all auctioned off" and the proceeds put in the bank. Finally, the money was used to buy gold and silver coins. In 2013, Harlan purchased 1,000 silver coins for $53,120, followed shortly thereafter by a purchase of 1,859 coins for $99,735.35. In 2014, Harlan exchanged silver coins to acquire 71 gold coins for $29,962. He testified that he currently had 51 gold coins in his possession, but that there should be 71 (i.e., one sheet containing 20 coins was missing).

### (b) Inheritance

Harlan testified that after his father died in 2006 (during the marriage), he received an inheritance from the estate. Harlan received a 25-percent share, which amounted to $60,000. Instead of receiving money, Harlan used his share as a credit toward the purchase of the home farm from his siblings. The additional money needed to purchase the farm—approximately $100,000—came from a bank account.

Shirley testified that the funds to purchase the farm came from their joint bank account, which was funded by the sale of the parties' house in Colorado. The parties later sold the home farm for $348,800. The sale proceeds were placed in the parties' joint account at Great Western Bank, which had a balance of $358,000 in July 2015.

## 2. PROPERTY DIVISION IN DECREE

As part of the division of the marital estate, the decree awarded Harlan 71 gold coins valued at $19,330 (which placed the responsibility for the lost coins solely upon Harlan). In effect, the decree equally divided the proceeds from the 401K, but it separately set off to Harlan $130,000 for the value of the nonmarital proceeds from the 401K.

The decree awarded each party $179,000 (one-half of the balance) of the Great Western Bank account. But it separately set off $60,000 to Harlan as "[l]and inheritance."

Including both marital and nonmarital property, the decree awarded Harlan assets totaling $399,730 and Shirley assets amounting to $205,300. After deducting amounts represent-ing nonmarital property ($190,000 at issue here, plus $4,000 attributable to a truck which is not now disputed), the ultimate division of property was an award of $205,730 to Harlan and an award of $205,300 to Shirley.

Shirley appealed, and Harlan filed a cross-appeal.

## 3. COURT OF APPEALS' DECISION

The Court of Appeals found that Harlan did not meet his burden of proving that his 401K had a value of $130,000 at the time of marriage and that he did not prove the amount he inherited from his father.

[1] Appeals in domestic relations matters are heard de novo on the record, and thus, an appellate court is empowered to enter the order which should have been made as reflected by the record.[2] But instead of affirming as modified, the Court of Appeals reversed in part and remanded to the trial court with directions. It directed the trial court to award Shirley half of the awards of $130,000 and $60,000 previously set off to Harlan as nonmarital property. It also found that the net tax liability of $27,494 should be divided evenly between the parties and deducted from the shares of each party's marital property. The

---

[2] *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

Court of Appeals' effective modification of the decree regarding the tax liability is not contested on further review and, thus, shall be carried out in a modified decree.

Harlan filed a petition for further review, which we granted.

## III. ASSIGNMENTS OF ERROR

In his petition for further review, Harlan assigns two errors which we consolidate. He claims that the Court of Appeals erred in determining that because he offered no documentary evidence at trial to support his undisputed testimony, he failed to meet his burden of proof that he had $130,000 in a 401K at the time of marriage and that he received a $60,000 inheritance during the marriage.

## IV. STANDARD OF REVIEW

[2-4] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.[3] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[4] However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[5] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[6]

---

[3] *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019).

[4] *Id.*

[5] *Id.*

[6] *Id.*

## V. ANALYSIS

### 1. Foundational Principles

We begin by recalling three foundational principles that, along with the standard of review, guide our decision.

[5] The first principle is the burden of proof imposed in this case. In the realm of factfinding, the function of a standard of proof is to instruct the fact finder concerning the degree of confidence our society thinks he or she should have in the correctness of factual conclusions for a particular type of adjudication.[7] Unless an exception applies, the burden of proof in civil cases requires only the greater weight of the evidence.[8] The greater weight of the evidence means evidence sufficient to make a claim more likely true than not true.[9] That burden of proof applies here.

[6,7] Second, we are mindful that there is no hierarchy of evidence. "'[T]here is no general rule of evidence that a party must produce the best evidence which the nature of the case permits.'"[10] A witness' testimony, like a document, is a kind of evidence.[11] A trial court weighs the credibility of the witnesses and the evidence and determines what evidence should be given the greater weight in arriving at a factual determination on the merits.[12] In doing so, a trial court may choose to accord greater weight to a document. Given the frailties of memories, documentary evidence relating to a long past event and

---

[7] See *In re Interest of Christopher T.*, 281 Neb. 1008, 801 N.W.2d 243 (2011).

[8] See, *In re Application No. OP-0003*, 303 Neb. 872, 932 N.W.2d 653 (2019); *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015).

[9] *Flores v. Flores-Guerrero, supra* note 8.

[10] *Equitable Life v. Starr*, 241 Neb. 609, 615, 489 N.W.2d 857, 862 (1992), quoting Michael H. Graham, Handbook of Federal Evidence § 1001.0 (3d ed. 1991).

[11] See *Columbia Nat. Bank v. German Nat. Bank*, 56 Neb. 803, 77 N.W. 346 (1898).

[12] *Lockwood v. Lockwood*, 205 Neb. 818, 290 N.W.2d 636 (1980).

prepared by one not affected by it may be entitled to greater consideration than oral testimony.[13] Ordinarily, a contemporaneous memorandum of an event is entitled to greater evidentiary weight than another recollection of it.[14] But it does not follow that where there is no documentary evidence, a party's testimony alone cannot satisfy a burden of proof.

[8-11] Third, it is well settled that the first step in the equitable division of property is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage.[15] Contributions to retirement accounts before marriage are not assets of the marital estate.[16] Gifts and inheritances, even when received during the marriage, are presumed to be nonmarital.[17] In a marital dissolution proceeding, the burden of proof rests with the party claiming that property is nonmarital.[18]

With these principles in mind, we turn to the two imperatives upon which the Court of Appeals relied.

## 2. Necessity of Documentary Evidence

Although the district court accepted Harlan's testimony as sufficient to establish portions of the property as nonmarital, the Court of Appeals rejected Harlan's claims solely on the basis that he lacked documentation. Regarding the 401K, the Court of Appeals stated:

> The problem with Harlan's claim is that it is based solely on his own recollection. Harlan failed to adduce any documentation whatsoever regarding when the 401K came into existence, what contributions were made to it

---

[13] See 32A C.J.S. *Evidence* § 1286 (2008).

[14] *Id.*

[15] See *Rohde v. Rohde*, 303 Neb. 85, 927 N.W.2d 37 (2019).

[16] See *Lorenzen v. Lorenzen*, 294 Neb. 204, 883 N.W.2d 292 (2016).

[17] *Westwood v. Darnell*, 299 Neb. 612, 909 N.W.2d 645 (2018).

[18] *Rohde v. Rohde, supra* note 15.

by him or his employer, and how it was invested or grew over the years.[19] The Court of Appeals recognized that Harlan tried to obtain records to demonstrate the value of his 401K in 1992, but could not do so because his former employer did not maintain those records. The Court of Appeals then suggested a number of other records that perhaps Harlan could have obtained. It found that the trial court erred in setting off $130,000 to Harlan "based solely on his testimony."[20] And with regard to the inheritance, the Court of Appeals noted that Harlan presented documentation to support his claim that he received an inheritance, but that he "presented no documentation which in any way establishes or corroborates the amount of that inheritance."[21] In effect, the Court of Appeals held that Harlan's testimony could not be accepted without documentary support. That goes too far.

[12,13] A nonmarital interest in property may be established by credible testimony.[22] In *Brozek v. Brozek*,[23] we recognized that a spouse's own testimony can establish a "'tracing link,'" i.e., tracking an asset to a nonmarital source. Of course, triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof.[24] Evidence not directly contradicted is not necessarily binding on the triers of fact, and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence.[25] We

---

[19] *Burgardt v. Burgardt, supra* note 1, 27 Neb. App. at 65, 926 N.W.2d at 460.

[20] *Id.* at 67, 926 N.W.2d at 461.

[21] *Id.* at 68, 926 N.W.2d at 462.

[22] See *Kerr v. Kerr*, 770 N.W.2d 567 (Minn. App. 2009).

[23] *Brozek v. Brozek*, 292 Neb. 681, 701, 874 N.W.2d 17, 32 (2016).

[24] *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018).

[25] *Fredericks Peebles v. Assam*, 300 Neb. 670, 915 N.W.2d 770 (2018).

acknowledged in *Brozek* that the trial court was "entitled to discount [the husband's] testimony about [an alleged premarital asset] because of his admitted uncertainty."[26]

While documentary evidence may be more persuasive, it is not absolutely required. In a case where the husband did not produce bank statements proving the premarital balance of his bank accounts but the wife did not contest the values he listed on a joint property statement, we found an abuse of discretion by the trial court in failing to set off the value of premarital bank accounts.[27] In *Onstot v. Onstot*,[28] we affirmed the trial court's decision to not grant the husband credit for the value of a premarital house at the time of marriage, stating that "assuming [the husband's] testimony established the value of the residence at $100,000 at the time of the marriage, he did not *testify* or supply any documentation as to whether the residence was either encumbered or unencumbered at that time and, if encumbered, to what extent." This statement implies that premarital equity could have been established by testimony alone. In a case where undisputed testimony established items as premarital, the Court of Appeals determined that the trial court erred in classifying the items as marital property.[29]

Of course, a party opting to rely upon his or her testimony alone does so at the risk of nonpersuasion. In a case where the trial court set aside the total amount of premarital funds that the husband claimed he used to purchase property, we reduced the amount of the set aside—even though the husband's testimony was uncontradicted—because there was nothing in the record to show the source of certain funds.[30] In *Brozek*, we affirmed the trial court's decision declining to set off any amount to the

---

[26] *Brozek v. Brozek, supra* note 23, 292 Neb. at 701, 874 N.W.2d at 32.

[27] See *Osantowski v. Osantowski, supra* note 2.

[28] *Onstot v. Onstot*, 298 Neb. 897, 904, 906 N.W.2d 300, 306 (2018) (emphasis supplied).

[29] See *Schmeidler v. Schmeidler*, 25 Neb. App. 802, 912 N.W.2d 278 (2018).

[30] See *Frost v. Frost*, 227 Neb. 414, 418 N.W.2d 220 (1988).

husband for the premarital portion of two checking accounts (he testified one account had about $79,000 at the time of marriage), crops from a 1993 harvest, and machinery owned at the time of marriage (but later sold or traded).[31] A party seeking recognition of nonmarital property may find it easier to meet his or her burden of persuasion with documentary support. But its absence does not automatically defeat the claim.

### 3. Definitively Proved

The Court of Appeals also determined that Harlan "failed to meet his burden of proof to *definitively* identify the value of his claimed premarital asset."[32] "Definitively" means "[s]o as to decide or settle the matter; decisively, conclusively, finally, definitely."[33]

In doing so, the Court of Appeals misread our decision in *Brozek*. The Court of Appeals stated that we "reversed the trial court judgment, finding that the husband had not definitively identified the values of his premarital assets."[34] We did neither. Rather, we *affirmed* the trial court's judgment, concluding, as did the trial court, that the husband failed to trace the value of property alleged to be premarital. We stated that he did "not identify the different permutations that his premarital property underwent during the marriage" and that "we cannot follow the threads in the hodgepodge of figures."[35]

[14] It is axiomatic that an item must be identified in order to be set off as nonmarital. But its value need not be definitively or conclusively proved; the greater weight of the

---

[31] *Brozek v. Brozek, supra* note 23.

[32] *Burgardt v. Burgardt, supra* note 1, 27 Neb. App. at 68, 926 N.W.2d at 462 (emphasis supplied).

[33] "Definitively," Oxford English Dictionary Online, http://www.oed.com/view/Entry/4889 (last visited Sept. 24, 2019).

[34] *Burgardt v. Burgardt, supra* note 1, 27 Neb. App. at 66, 926 N.W.2d at 461.

[35] *Brozek v. Brozek, supra* note 23, 292 Neb. at 699, 874 N.W.2d at 31.

evidence is sufficient. In other words, the value of the non-marital portion of an asset must be established by the greater weight of the evidence.

### 4. Resolution

In summary, we reject the Court of Appeals' articulations that documentary evidence is necessary to establish a claim to nonmarital property and that a nonmarital value must be proved "definitively." While Harlan had the burden of persuading the district court of the nonmarital character of the property and its value, he succeeded in doing so. On appeal, our standard of review governs. And here, it is important to recognize that the district court heard and observed the witnesses and accepted one version of the facts rather than another. As we have said, this court is not inclined to disturb the division of property made by the trial court unless it is patently unfair on the record.[36]

The district court set off to Harlan $130,000 as the non-marital value of his 401K and $60,000 as the nonmarital value of his inherited share of the home farm. Evidence supports the court's award. Harlan testified that his 401K was valued at $130,000 at the time of marriage. When asked, "Are you aware of any kind of 401-K Harlan had before marriage worth $130,000," Shirley responded, "No." But on cross-examination, she admitted she had no evidence to dispute that Harlan contributed to the 401K prior to marriage. Harlan testified that his inherited share of his father's farm was worth $60,000, and Shirley did not dispute this. This was not a situation where the trial court rejected a party's unsupported testimony and, in affirming, an appellate court noted the lack of documentary evidence. Here, the district court evidently found Harlan's testimony to be credible and set off the amounts claimed as nonmarital. Upon our de novo review, we cannot say it abused its discretion in doing so.

---

[36] *Tavlin v. Tavlin*, 194 Neb. 98, 230 N.W.2d 108 (1975).

## VI. CONCLUSION

Upon our de novo review, we find no abuse of discretion by the district court in setting off to Harlan amounts representing nonmarital portions of his 401K and inheritance. We reverse the decision of the Court of Appeals as to those items and remand the cause to that court with direction to affirm the district court's decree as modified to divide the net tax liability of $27,494 evenly between the parties.

Reversed and remanded with direction.